

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ELIZABETH J. TAYLOR,

            Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

            Defendant.

CV-08-1333-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

      Claimant Elizabeth J. Taylor ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). *See* 42 U.S.C. §§ 401-433 (2008). This court has

Page -1- OPINION AND ORDER

jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgments in this case in accordance with FRCP 73 and 28 U.S.C. § 636(c). Following a careful review of the record, the court concludes that the Commissioner's decision should be affirmed.

*Procedural History*

Claimant protectively filed for DIB and SSI on February 21, 2005, alleging a disability onset date of December 14, 2004, based on fibromyalgia, depression, anxiety, post traumatic stress disorder, and insomnia. The claims were denied initially and on reconsideration. On November 20, 2007, a hearing was held before an Administrative Law Judge ("ALJ"), who issued a written decision on February 14, 2008, finding Claimant not disabled. Claimant requested review of this decision on March 4, 2008. The Appeals Council denied this request on September 11, 2008, making the ALJ's decision the Commissioner's final decision. Claimant filed for review of the final decision in this court on November 13, 2008.

*Standard of Review*

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Page -2- OPINION AND ORDER

The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In determining a claimant's residual functional capacity ("RFC"), an ALJ must consider all of the relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883, *citing* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

*Summary of the ALJ's Findings*

The ALJ engaged in the five-step "sequential evaluation" process when he evaluated Claimant's disability. *See* 20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ found that Claimant has not engaged in substantial gainful activity since the onset of her alleged disability, on December 14, 2004. (Tr. 22.) At step two, the ALJ determined that Claimant suffers from the severe impairment of fibromyalgia. (Tr. 22.)

At step three, the ALJ concluded that Claimant "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . ." (Tr. 22.) In particular, the ALJ found that Claimant's

Page -3- OPINION AND ORDER

impairments did not meet the listings for Muscuoskeletal System, section 1.00, Immune System Disorders, section 14.00, Affective Disorders, section 12.04, or Anxiety-Related Disorders, section 12.06. (Tr. 23.)

The ALJ then conducted an assessment of Claimant's RFC. The ALJ outlined Claimant's RFC as follows: Claimant is capable of performing semi-skilled light to medium work, defined as the ability to lift or carry 50 pounds occasionally, 25 pounds frequently, and to sit, stand, or walk for six hours out of a total eight hours. (Tr. 23.) The ALJ further concluded that Claimant's account of her symptoms was not fully supported by objective evidence, and, accordingly, the ALJ found Claimant not fully credible based upon her daily activities, observations of treatment providers, normal objective findings, lack of treatment, and less than full effort on evaluation. (Tr. 24-26.)

At step four, the ALJ concluded that Claimant is able to perform light to medium semi-skilled work, and thus was able to perform her past relevant work, with the exception of horse trainer, which required skilled work. (Tr. 26.)

While not required to make a finding at step five, the ALJ concluded that "if Claimant's work capacity were reduced to unskilled due to possible fatigue and sedentary for the same reason," Claimant was capable of performing other work that exists in substantial numbers in the national economy. (Tr. 26-27.) The ALJ cited Vocational Expert ("VE") testimony that a hypothetical individual with Claimant's limitations could perform the unskilled sedentary jobs of food checker clerk, cleaner and polisher with a sit stand option, and small products assembler. (Tr. 27.) Therefore, the ALJ found Claimant not disabled.

///

*Discussion*

Claimant objects to the ALJ's findings on three grounds: (1) at step two, the ALJ erred by excluding her anxiety, depression, and adjustment disorder as severe impairments; (2) the ALJ failed to appropriately evaluate claimant credibility; and (3) the ALJ failed to appropriately consider lay witness testimony. The court will address each in turn.

I.   The ALJ's Step Two Finding

At step two of the sequential evaluation process, the ALJ determines if the claimant has a "severe" impairment. 20 C.F.R. § 404.1520(a)(4). An impairment is "severe" if it "significantly limits [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a). "Basic work activities" are the abilities and aptitudes necessary to do most jobs, including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" "[c]apacities for seeing hearing, and speaking;" and "[u]nderstanding, carrying out, and remembering simple instructions." 20 C.F.R. §§ 404.1521(b)(1-3); 416.921(b)(1-3). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than minimal effect on an individual[']s ability to work." *Smolen*, 80 F.3d at 1290. Step two serves as a "de minimis screening device to dispose of groundless claims." *Id.*

Claimant submits that the ALJ erred in failing to find her mental impairments severe. The evidence of Claimant suffering from her alleged mental impairments is minimal and comes primarily from self-reports. There is no objective evidence of depression, anxiety, or adjustment disorder in the record. In April 2005, examining physician Dr. Deena Klein, M.D. performed a psychiatric evaluation of Claimant, concluding that Claimant presented "a level of disability far

Page -5- OPINION AND ORDER

out of proportion to any objective findings," thereby precluding her from making any psychological diagnosis. (Tr. 318.) Dr. Klein saw no reason to conclude that Claimant could not return to work, and observed that "in fact [Claimant] is reporting she is having symptoms just from being off work." (Tr. 318.) The only evidence supporting any limitations whatsoever are confined to the specific situation that Claimant was having with a supervisor that prompted her to quit working on December 14, 2004. In March 2005, Dr. David Ushman noted that while Claimant did present with some symptoms of depression and anxiety, they were related to the specific issues she was having with a supervisor and for which she filed a stress-related worker's compensation claim. (Tr. 348, 419, 427.) Dr. Ushman concluded that he felt that Claimant's symptoms would be relieved once she was transferred to a new supervisor, and that her anxiety and depression were caused by being exposed to gender bias at work. (Tr. 420, 427.) There is no evidence in the record that claimant's depression and anxiety limited her in any other work setting.

Even assuming the ALJ should have considered Claimant's anxiety, depression, and adjustment disorder as severe impairments, the ALJ found in favor of Claimant at step two, permitting the claim to go forward to further steps of the sequential disability analysis. Thus, any error in failing to consider certain impairments as severe was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (any error by ALJ in neglecting to list claimant's bursitis as a step two severe impairment was harmless where the ALJ considered the limitations caused by the impairment in assessing the claimant's RFC at step four); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error in omitting an impairment from the severe impairments identified at step two was harmless where step two was resolved in claimant's favor). The ALJ's evaluation

of Claimant's testimony regarding the limiting effects of her alleged impairments is discussed below. Thus, the court will not reverse or remand the matter at step two.

## II.  Claimant Credibility

When a claimant's medical record establishes the presence of a "medically determinable impairment" that "could reasonably be expected to produce the [claimant's alleged] pain or other symptoms," the ALJ must evaluate the claimant's credibility in describing the extent of those symptoms. 20 C.F.R. § 404.1529. In the event the ALJ determines that the claimant's report is not credible, such determination must be made "with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)). Unless the record has affirmative evidence of malingering, the ALJ must offer specific, clear and convincing reasons for rejecting the claimant's testimony about the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

When making a credibility evaluation, the ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. In weighing a claimant' credibility, the ALJ may also consider the claimant's daily activities, work record, and observations of physicians and third parties in a position to have personal knowledge about the claimant's functional limitations. *Id.* In addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid.

Page -7- OPINION AND ORDER

*Id., see also* SSR 96-7p. While a finding that a claimant lacks credibility cannot be premised solely on a lack of medical support for the severity of pain, *see Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), where the ALJ's credibility finding is supported by substantial evidence in the record, the finding will not be disturbed, *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

Here, the ALJ found that Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (Tr. 24.) The ALJ concluded that Claimant's testimony concerning the intensity, persistence, and limiting effects of her symptoms was not credible. (Tr. 24.) The ALJ explained that he rejected the testimony based upon inconsistencies between her claims and her behavior, failure to seek treatment, normal objective findings, observations of treatment providers, and less than full effort on evaluation. (Tr. 24-26.) However, the ALJ did not find evidence of malingering, and the record does not reflect affirmative evidence of malingering. Thus, the ALJ was required to set forth "clear and convincing" reasons to reject Claimant's testimony regarding the severity of her symptoms, which he did.

In discrediting Claimant's account of the severity of her symptoms, the ALJ noted inconsistencies between her claims and her behavior. An ALJ may rely upon a claimant's inconsistencies in finding a claimant not credible. *Smolen*, 80 F.3d at 1284. The ALJ noted that the "circumstances of this claim are highly suspect," because the claim coincided with Claimant moving to rural Oregon, significantly increasing her commute and child care expenses. (Tr. 24-25, 561-562.) The ALJ also questioned Claimant's testimony that her symptoms require her to sit on the couch for most of the day because she had "taken on the responsibility of home

schooling" her children, and is their "sole care giver" at least five days a week, while her husband works. (Tr. 24.) The ALJ found that "it is highly improbable that the claimant is only spending [half an hour] per day home schooling both children." (Tr. 25.) The ALJ also found that Claimant's account of her limitations was inconsistent with a January 2007 treatment note in which Claimant told Dr. Eder that she works with her horses for exercise, and with an email she sent to Dr. Patel one month prior to the hearing, where she said that feeds, walks, and turns out her horses on a daily basis. (Tr. 25, 450, 464.)

The ALJ questioned Claimant's alleged "mental fog" because evidence in the record indicated that she was engaged with her treatment providers, often sending detailed emails to them "at different times of the day and night and on different days," relating the status of her treatment and seeking tax benefits based on her condition and activities. (Tr. 25, 447-449, 458-463, 476-477, 479.) Dr. Walsh, one of Claimant's treating therapists, noted that Claimant had no communication or concentration difficulties and is able to adequately track conversation and sequence of events. (Tr. 25, 390.) Examining physician Dr. Deena Klein, M.D., concluded that Claimant has no mental impairments that would prevent her from returning to work. (Tr. 318.) Dr. Karen Bates-Smith, Ph.D., a DDS clinical psychologist, found that Claimant has "no problems with paying attention or following instructions." (Tr. 348.)

The ALJ also found that Claimant's account of the severity of her symptoms was undermined because she was inconsistent in seeking treatment, her alleged side-effects were not documented by the record, and she was non-compliant with treatment recommendations. (Tr. 25.) The ALJ is permitted to consider lack of treatment when evaluating credibility. *Burch*, 400 F.3d at 681. In discrediting Claimant, the ALJ noted that there was an unexplained gap in

Page -9- OPINION AND ORDER

Claimant's treatment records, in that she did not see her primary care physician Dr. Patel for one year, despite her complaints of severe limitations. (Tr. 25.) The record reflects this observation, as Claimant saw Dr. Patel on August 14, 2006, but Dr. Patel's next treatment note is not until October 25, 2007. (Tr. 444, 468.) However, during this time, Claimant continued contact with Dr. Patel, in the form of email and telephone correspondence (Tr. 447-450, 453-455, 457-462) and maintained regular visits with Dr. Charles R. Eder, M.D., for her fibromyalgia (Tr. 451, 455-457, 463-468). As further support, the ALJ remarked that though Claimant alleges extreme side effects from all past medications, such side effects are "somewhat improbable and certainly not recorded with specificity in treatment notes." (Tr. 25.) The record does not support this conclusion, as numerous treatment providers recorded that Claimant repeatedly and consistently told them that she was experiencing severe side effects from virtually every medication she tried. (Tr. 242-243, 418, 444, 480, 485, 491, 499.) Thus, substantial evidence does not support the ALJ's assertion that Claimant had unexplained gaps in her treatment record or the ALJ's rejection of Claimant's reports of severe side effects.

However, the record does reflect that Claimant was repeatedly non-compliant with treatment recommendations, specifically with provider recommendations that she exercise to reduce her fibromyalgia symptoms. (Tr. 444, 499.) At Claimant's initial visit on September 20, 2005, she told Dr. Patel that she was "too busy" to attend physical therapy or a fibromyalgia class. (Tr. 25, 491.) The record reflects that Claimant eventually attended the fibromyalgia class on July 26, 2006. (Tr. 472-473.) However, as of October 25, 2007, two years after Dr. Patel advised her to attend physical therapy, she still had not done so. (Tr. 444.)

In discrediting Claimant's account of her symptoms, the ALJ relied upon the lack of

medical evidence in the record. (Tr. 25.) "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider." *Burch*, 400 F.3d at 681. He noted that there was no objective medical evidence of a compromised immune system, as a neurologic exam was normal and there was no indication of edema. (Tr. 25, 499.) The record supports this observation, as Dr. Linda Jensen, M.D., a DDS physician, also gave "very little credence" to Claimant's account of her symptoms, given that there was a "lack of deficits in the medical records." (Tr. 333.)

The ALJ also relied upon several physician's observations in support of his conclusion that there was no medical basis preventing Claimant from returning to work. In conjunction with other findings, the ALJ may rely upon physician observations in finding a claimant not credible. *Smolen*, 80 F.3d at 1284. Occupational medicine physician Dr. Feldstein found that Claimant had "no objective impairment" in her shoulder that would prevent her from working, despite Claimant's claims that shoulder pain caused her to stop working and prevented her from looking for other work. (Tr. 25, 252.) The ALJ cited Dr. Melcher's December 2004 treatment note indicating that he did not consider Claimant's fibromyalgia to be a disabling condition, and thus did not approve any time off from work. (Tr. 25, 244.) The record reflects that Dr. Melcher also observed that Claimant "is under the impression that fibromyalgia qualifies for disability and her plan is take time off from work and apply for disability benefits." (Tr. 244.) Dr. Jensen concluded that Claimant's medical records "show that [Claimant] apparently quit her job secondary to stress, not worsening of her physical condition." (Tr. 333.) Finally, Dr. Patel observed that Claimant "may be prone to somatization." (Tr. 441.)

Finally, the ALJ rejected Claimant's account of the severity of her symptoms because, in

Page -11- OPINION AND ORDER

September 2005, Claimant made less than full effort during her physical capacity evaluation, thereby casting further doubt on her credibility. (Tr. 25, 429-437.) During her evaluation, Manju Thomas, MSPT, observed that Claimant had "a number of inconsistent responses," her "pain ratings . . . did not always match her functional abilities," and that her "actual capabilities are greater than her perceived capabilities." (Tr. 436-437.) Such a failure to give maximum or consistent effort during examinations supports an ALJ's conclusion that claimant was not credible. *Thomas*, 278 F.3d at 959.

This court finds that not all the reasons given by the ALJ for discrediting Claimant's testimony were proper. However, even though not every reason relied on by the ALJ to discount a claimant's credibility is upheld on review, the credibility determination will be sustained if the determination is supported by substantial evidence. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Here, the ALJ's reasoning reflects that he did not arbitrarily discount Claimant's assertions. The ALJ considered proper factors and drew logical inferences supported by a rational interpretation of substantial evidence in the record. While not the only interpretation of the evidence, the ALJ's reasoning is clear and convincing. Therefore, the ALJ's credibility determination will not be disturbed.

### III.    Lay Witness Testimony

Claimant argues that the ALJ improperly rejected her husband's testimony in assessing her RFC. Lay testimony of witnesses, including family members, about their own observations regarding the claimant's impairments must be considered by the ALJ. *Smolen*, 80 F.3d at 1288. Testimony from lay witnesses who see the claimant on a regular basis is of particular value, because they can often ascertain whether the claimant is malingering or truly suffering. *Dodrill*

*v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). If an ALJ chooses to discount the statements of lay witnesses, the ALJ must give "germane reasons" for discrediting the testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Inconsistency with medical evidence is considered a "germane" reason for discrediting lay witness testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Lewis*, 236 F.3d at 511).

Here, the ALJ did not disregard Claimant's husband's statements without comment. Instead, the ALJ rejected his statements because his account of Claimant's symptoms was nearly identical to Claimant's statements, and "the medical treatment and consulting records undermine the existence and extent of claimant's symptoms. The fact that her husband believes his wife's ability to function is extremely limited and acts accordingly, does not make his wife's complaints more credible." (Tr. 24.) As discussed above, the ALJ specifically noted the observations of several treating and examining physicians that contradicted the account of Claimant's symptoms. In his opinion, the ALJ discussed Claimant's husband's testimony together with Claimant's subjective complaints, noting that he rejected Claimant's husband's statements for the same reasons he rejected Claimant's testimony. In light of the conclusion that the ALJ's reasons for discounting Claimant's statements were clear and convincing, it follows that the same reasons provide sufficient justification for the ALJ's rejection of Claimant's husband's statements. Accordingly, reversal or remand is not warranted on this issue.

/ / /

/ / /

/ / /

/ / /

*Conclusion*

For the reasons discussed above, the decision of the Commissioner is AFFIRMED and the case is DISMISSED.

DATED this 25th day of February, 2010.

JOHN V. ACOSTA
United States Magistrate Judge